## Gigous v. Miller

*Henry O. Heiser III,* for plaintiffs.
*William A. Addams,* for defendants.

SPICER, *P.J.*, April 19, 1991—This case arises out of an accident which occurred at a railroad crossing. A train collided broadside with a pick-up truck driven by Mr. Gigous. He and his wife seek punitive damages. Defendants move for partial summary judgment, asking that the court determine that plaintiffs are not entitled to such damages.

Plaintiffs state that discovery has yet to be completed but do not resist the motion on this basis. They have, apparently, sought to examine defendant's financial worth and this action has prompted the motion. Ordinarily, summary judgment relief is not available when the moving party must rely on oral testimony of a favorable witness. The non-moving party is entitled to have a jury pass on the credibility of such testimony, even when it is uncontradicted. *Penn Center House Inc. v. Hoffman*, 520 Pa. 171, 553 A.2d 900 (1989). The train's speed is a critical consideration in the case and its estimate comes from defendant. Nevertheless, plaintiffs do not oppose the motion because of it being based on oral testimony. In fact, plaintiffs assume the truth of depositional testimony by defendant. Most of their arguments are based upon a train speed of 15 mph.

We have attempted, in the past, to deal separately with issues raised by claims for punitive damages. Ordinarily, we do not restrict plaintiffs' rights to demand damages before trial, unless some detriment attaches to defendants. In the case of exemplary damages, plaintiffs enjoy rummaging through financial information, a practice which causes both distress and anxiety to most subjects. We ruled, in one case, that requests for punitive damages will not be stricken when facts sufficiently justify them. However, recognizing the ease, and sometimes indifference, with which such facts are alleged, we proposed to limit discovery to those cases in which

plaintiffs could prove prima facie entitlement to such damages. *Herr v. Snelgrove II,* 30 Adams Leg. J. 177 (1988).

Both parties apparently want a ruling now and we make such on the record before us. Defendants are entitled to relief only if there is an absence of any genuine factual issue, the case is clear and, as a matter of law, punitive damages cannot be recovered. See *Rybas v. Wapner,* 311 Pa. Super 50, 457 A.2d 108 (1983).

Both judges in this court have addressed the issue of punitive damages on numerous occasions. Such requests pose very difficult problems of balancing notions of liberality with gatekeeping. On the one hand, we try to exclude, at the earliest point possible, extraneous issues and oppressive strategy. Demands for punitive damage are unfortunately often pressed more as matters of tactics than any genuine prospect of recovery.

On the other hand, entitlement or non-entitlement often comes down to a matter of degree.

"We did, however, recognize that matters of degree, speed and inattention involve judgment problems. There comes a point where a fact finder, and not the court should make the judgment." *Herr v. Snelgrove II, supra,* at 177.

We have recognized a need for gatekeeping in areas where conventional concepts of negligence are only emphasized to make them sound outrageous. It is not enough that great harm results or that defendants have been negligent. In those cases, the wrongdoer is expected to fairly and adequately compensate the injured party. It is only when defendant's conduct becomes so outrageous as to justify punishment that exemplary damages are allowed. These damages are, by definition, more than adequate and can be considered even unfair. Although

intentional conduct is not required, there must be at least imputed awareness of unreasonable risk of physical harm to others. "These concepts rationally relate to conduct which is either intentional or so unreasonable as to almost become a substitute for conscious action or omission." *Herr v. Snelgrove, supra,* at 140. The conduct must involve a risk substantially greater than that necessary to make the conduct negligent.

Plaintiffs have undeniably alleged negligence. The question is whether the facts upon which they rely go far enough beyond negligence to amount to recklessness. For purposes of ruling on the motion, we consider facts most favorably to plaintiffs. Some are in issue and we do not mean, by reciting them, to suggest they are true. We have the following:

(1) The crossing involves Herr's Ridge Road, a heavily travelled highway with a posted speed limit of 35 mph.

(2) Because of obstructions, the line of vision along both the highway and the railroad was impaired.

(3) Defendant approached with a loaded train at a speed of 15 mph, without giving advance warning signals.

(4) The intersection was not equipped with control devices such as flashing lights and/or gates.

(5) It was feasible for defendant to slow to a walk and have a flagman control the intersection.

(6) Defendant did not maintain a proper lookout.

(7) Near misses occur about once a month at this intersection.[1]

(8) Industry safety standards call for reciprocal sight distances of 143 feet along the track and 270

---

1. We do not know how fast Mr. Gigous was driving. There is no deposition of his testimony and the locomotive engineer did not see the truck until it was in the intersection.

feet along the road, when a vehicle approaches at 35 mph for locomotive speeds of 15 mph.[2]

(9) There are places where the sight distance along the tracks is only 37 feet.

(10) The train crew was aware that motorists could not see or hear the train.

These facts add up to the question of how slow is slow enough.

We say this because allegations relating to warnings and control devices obviously raise only issues of negligence. A dangerous condition may have existed, but defendants still had the right to proceed through. Plaintiffs suggest the speed should have been at a walk and that may, indeed, be correct. However, is 15 mph clearly not outrageous conduct?

Of course, both the motorist and the train crew had a duty to be careful. We do not deal with a Hollywood scenario with a damsel in distress tied to the tracks. Neither side, however, has argued right of way and we do not consider the extent of negligence of a driver travelling across a railroad crossing at the speed limit. Instead, we focus on defendant's conduct alone.

Our colleague, Judge Kuhn, recently considered a request for punitive damages in *Quint v. Weis Markets,* (November 29, 1990). There, a store employee stacked a cart and thereafter blindly struck a customer. Judge Kuhn analogized the situation to driving on a highway blindfolded.

Passing through a crossing with limited vision can be likened to wearing a blindfold when the speed is so excessive as to preclude ever stopping in time. In this case, plaintiff might argue that 15' mph made obstructions to sight, such as shrubbery and con-

---

2. Without knowing how fast the traffic actually moves on the road, this fact may or may not be significant.

tour, as effective as a blindfold. On the other hand, plaintiff also stresses that the train crew was inattentive. This suggests that the train may have been able to stop or give adequate warning had the crew been careful.

Fifteen mph does not strike us as outrageous enough for the assessment of punitive damages. The impact of plaintiff's allegations is that a slower speed would have allowed defendant to stop. They have also argued that PUC regulations required that a person alight from the train and control the intersection by flag. As we have said, this was certainly feasible. Defendants said flagging would have been "no big deal." Probably slowing to a crawl would have not been either. In ancient London, footmen were hired to run before carriages and clear the way. Knowing what we do about that time, this practice was probably motivated by a desire to keep carriage wheels clean. More humanitarian concerns would suggest that some controls be exercised at crossings such as this one.

Defendant has called to our attention that no regulation required flagging and we are satisfied this is correct. There was a time when people were more concerned with train crossings and, perhaps defendants should recognize this fact and place flagmen where no gates or lights are available. Failure to follow this practice might very well be negligence, but we are convinced it is not so outrageous an omission to justify punitive damages.

## ORDER OF COURT

And now, April 19, 1991, partial summary judgment is entered in favor of defendants and against plaintiffs on the issue of punitive damages.